**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| American Federation of Aviculture, Inc.     ) | |
|     ) | Civil Action |
|     Plaintiff,     ) | No._____ |
|     ) | |
|     v.     ) | **PLAINTIFF'S COMPLAINT FOR** |
|     ) | **DECLARATORY JUDGMENT** |
| United States Fish and Wildlife Service;     ) | **AND INJUNCTIVE RELIEF** |
| United States Department of the Interior;     ) | |
| Ryan Zinke, in his official capacity as     ) | |
| Secretary of the Interior; Greg Sheehan, in     ) | |
| his official capacity as Acting Director of the     ) | |
| U.S. Fish and Wildlife Service,     ) | |
|     ) | |
|     Defendants.     ) | |

**INTRODUCTION**

1.  This suit arises under the Endangered Species Act (ESA), 16 U.S.C. § 1540 (g).  It seeks to hold Defendants—United States officials and agencies—accountable for their failure to make a finding on a petition seeking the reclassification of the golden conure (Guaruba guarouba), also known as the golden parakeet (Aratinga guarouba), within 12 months of the determination that the Petition may be warranted, as required by federal law.

2.  In August 2014, the American Federation of Aviculture, Inc. (AFA) duly submitted a Petition under 16 U.S.C. § 1533(b)(3)(A) requesting that Defendants delist the golden conure, or in the alternative, downlist it to threatened.  On April 10, 2015, the Defendants issued a belated 90-day finding, stating that the petition presents substantial scientific or commercial information indicating that the reclassification may be warranted. *See* 80 Fed. Reg. 19,259, 19,261 (2015). Pursuant to 16 U.S.C. § 1533(b)(3)(B) of the ESA, the Service then had 12 months to publish one of three findings:  (1) the petitioned action is not warranted; (2) the petitioned action is warranted, along with a proposed regulation; or (3) the petitioned action is warranted, but immediate

1

promulgation of a final regulation is precluded by pending proposals.  Although it has been 27 months since the Defendants published the determination that the AFA's petition may be warranted, the Defendants still have not issued a 12-month finding.  Therefore, Defendants violated the ESA, and unlawfully withheld or unreasonably delayed required agency action in violation of the APA.  *See* 5 U.S.C. § 706(1).

### JURISDICTION AND VENUE

3.  This Court has jurisdiction pursuant to 5 U.S.C. § 702 (judicial review of agency action); 16 U.S.C. § 1540(c) (actions arising under the ESA); 16 U.S.C. § 1540(g) (citizen suits arising under the ESA); 28 U.S.C. § 1331 (civil action arising under the laws of the United States); and 28 U.S.C. § 2401(a) (6-year statute of limitations for civil suits against the United States). 28 U.S.C. § 1391(e)(1) (action may be brought where defendant resides).

4.  In August 2014, Plaintiff filed a Petition asking Defendants to downlist the golden conure.   The Petition is called PETITION OF THE AMERICAN FEDERATION OF AVICULTURE AND AFFILIATES TO DELIST THE GOLDEN CONURE FROM THE LIST OF ENDANGERED SPECIES UNDER THE ENDANAGERED SPECIES ACT.  The Petition is attached hereto as Exhibit 1, and is incorporated by reference.  To date, Defendants have failed to make a statutorily required 12-month finding on the Petition. Instead, Defendants say that making the finding is a "priority" that they hope to fulfill by the end of September 2018, which would be more than 29 months past the 12-month deadline imposed by the ESA. *See* Defendant's letter dated June 6, 2017, attached hereto as Exhibit 2; 16 U.S.C. § 1533(b)(3)(B).

5.  By April 18, 2017, Plaintiff provided Defendants with a 60-Day Notice of Intent To Bring a Citizen Suit Under the Endangered Species Act pursuant to 16 U.S.C. § 1540(g), as

required by the ESA.  Plaintiff has attached a copy of this notice as Exhibit 3 and incorporates it by reference.

6.  Venue in this district is proper under 28 U.S.C. § 1391(e)(1)(A) because the Department of the Interior resides in the District of Columbia.

## PARTIES

### Plaintiff

7. Plaintiff, the American Federation of Aviculture (AFA), a nonprofit national organization incorporated in California, was established in 1974 to represent all aspects of aviculture and to educate the public about keeping and breeding birds in captivity.  AFA supports public and private programs that support conservation of birds in the wild as well as humane husbandry, care, and breeding of birds.  AFA also represents the interests of more than 10,000 members, including bird breeders, pet bird owners, veterinarians, pet store owners, bird product manufacturers, and many other people who are interested in the future of birds and aviculture. AFA members own and maintain many hundreds of separate species of exotic birds, including golden conures.  Many AFA members are experts with long-term, hands-on experience with various species of birds.  Aviculturists serve an important role in the preservation of species, and in some cases are the only hope for the long term survival of species at risk for extinction in their native lands.

8.  Multiple AFA members breed golden conures, but are inhibited by ESA regulations. For example, AFA member Nancy Speed would breed more golden conures, if not for ESA regulations that limit the trade of these birds across state lines.

**Defendants**

9.  Defendant Ryan Zinke is sued in his official capacity as Secretary of the United States Department of the Interior (Secretary).  Secretary Zinke's official duties include ensuring timely responses to petitions filed under 16 U.S.C. § 1533(b)(3)(A).

10.  Defendant Greg Sheehan is sued in his official capacity as Acting Director of the United States Fish and Wildlife Service (Director).  The Secretary delegates ESA authority to the Director, who is responsible for responding to petitions filed under 16 U.S.C. § 1533(b)(3)(A).

11.  Defendant United States Department of the Interior is an agency of the United States that administers and implements the ESA, including responding to petitions filed under 16 U.S.C. § 1533(b)(3)(A).

12.  Defendant United States Fish and Wildlife Service is an agency within the Interior Department which has the delegated responsibilities of administering and implementing the ESA, including responding to petitions filed under 16 U.S.C. § 1533(b)(3)(A).

## GENERAL ALLEGATIONS

13.   The ESA authorizes Defendants to list species as either endangered or threatened due to the existence of any of several factors. 16 U.S.C. § 1533(a)(1)(A)-(E).  Those factors are:

(A)  The present or threatened destruction, modification, or curtailment of its habitat or range;

(B)  overutilization for commercial, recreational, scientific, or educational purposes;

(C)  disease or predation;

(D)  the inadequacy of existing regulatory mechanisms; or

(E)  other natural or manmade factors affecting its continued existence. *Id.*

14.  The ESA requires Defendants to make listing determinations "solely on the basis of the best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A).

15.   The ESA also requires Defendants to conduct status reviews, at least once every five years, of all listed species, to determine whether any species should be reclassified (i.e., removed from the list (delisted), changed in status from an endangered species to a threatened species (downlisted), or changed in status from a threatened species to an endangered species (uplisted)). 16 U.S.C. § 1533(c)(2)(A)-(B).

16.   The ESA authorizes interested persons to petition Defendants to reclassify listed species. 16 U.S.C. § 1533(b)(3)(A).

17.   Within 90 days of receiving a petition to reclassify a species, Defendants are required to "make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  16 U.S.C. § 1533(b)(3)(A).

18.   Once Defendants publish a determination that a petition presents substantial scientific or commercial information indicating that the reclassification may be warranted under 16 U.S.C. § 1533(b)(3)(A), Defendants must "promptly commence a review of the status of the species concerned."  *Id.*  Defendants then have 12 months to make and publish in the Federal Register a finding that either the petitioned action is not warranted or it is warranted.   16 U.S.C. § 1533(b)(3)(B).   If the petitioned action is warranted, the Defendants must either publish a proposed rule implementing the petitioned action, or it must publish a notice that timely promulgation of a rule is precluded by pending proposals to determine whether any species is endangered or threatened.  16 U.S.C. § 1533(b)(3)(B)(ii)-(iii).

## FACTUAL ALLEGATIONS

19.   The golden conure, including its subspecies, is listed as an endangered species by Defendants. *See* 41 Fed. Reg. 24,062, 24,066 (1976).

20.   Under ESA regulations, U.S. breeders and other aviculturists must first get a permit to transport golden conures across state lines.  50 C.F.R. § 17.21.  Breeders can only sell golden conures to other permit holders to enhance the propagation or survival of the species.  *See id.*

21.   The Defendants have never conducted a status review of the golden conure.

22.   On or around August 20, 2014, Defendants received Plaintiff's Petition requesting that Defendants delist the golden conure, or alternatively downlist from endangered to threatened status, and exempt U.S. breeders and other aviculturists from ESA permit requirements for interstate trade of the bird.

23.   The AFA's petition relied partly on research cited by the International Union for Conservation of Nature (IUCN) that shows scholarly estimates of the bird's population have grown from 1,000-2,500 to 10,000-20,000 birds today.  *See* Exhibit 1.

24.   On April 10, 2015, Defendants published a 90-day finding that the Plaintiff's Petition presents substantial scientific or commercial information indicating that the reclassification may be warranted, pursuant to 16 U.S.C. § 1533(b)(3)(A).

25.   Defendants did not make the required 12-month finding on Plaintiff's Petition by April 10, 2016, and have still not done so 15 months later.  Therefore, Defendants violated the ESA, and unlawfully withheld or unreasonably delayed required agency action in violation of the APA.  *See* 5 U.S.C. § 706(1); 16 U.S.C. § 1533(b)(3)(B).

## ALLEGATIONS SUPPORTING DECLARATORY RELIEF

26.   Plaintiff re-alleges the allegations contained in paragraphs 1 through 25 as though fully set forth herein.

27.   An actual and substantial controversy exists between Plaintiff and Defendants over the Defendants' duty to comply with the ESA and the APA to make a 12-month finding on Plaintiff's Petition.  16 U.S.C. § 1533(b)(3)(B).

28.   This case is justiciable because Defendants have failed to timely comply with their nondiscretionary duty to make a 12-month finding on Plaintiff's Petition, as required by the ESA. 16 U.S.C. § 1533(b)(3)(B).

29.   Declaratory relief will clarify the rights and obligations of the parties and is, therefore, appropriate to resolve this controversy.

## ALLEGATIONS SUPPORTING INJUNCTIVE RELIEF

30.   Plaintiff re-alleges the allegations contained in paragraphs 1 through 25 as though fully set forth herein.

31.   Plaintiff has been injured by Defendants' failure to comply with the ESA and the APA and issue the required 12-month finding on Plaintiff's Petition.  Plaintiff will be irreparably harmed if an injunction does not issue enjoining the Defendants from continuing to evade their duty to make a 12-month finding.

32.   Plaintiff has no plain, speedy, or adequate remedy at law.

33.   Plaintiff's claims for relief are ripe.

34.   If not enjoined by this Court, Plaintiff alleges on information and belief that Defendants will continue to violate the law that requires them to issue a 12-month finding for Plaintiff's Petition.

35.   Accordingly, injunctive relief is appropriate.

**FIRST CAUSE OF ACTION**
**(Violation of the ESA, 16 U.S.C. § 1533(b),**
**Failure To Make a Timely Finding**
**on a Petition To Reclassify a Species)**

36.    Plaintiff re-alleges the allegations contained in Paragraphs 1 through 35 as though fully set forth herein.

37.    The ESA requires Defendants, "[w]ithin 12 months after receiving a petition that is found . . . to present substantial information indicating that the petitioned action may be warranted" and then Defendants must make and publish one of the following findings in the Federal Register: (i) The petitioned action is not warranted; (ii) the petitioned action is warranted and a proposed regulation implementing the action; or (iii) the petitioned action is warranted, but cannot be immediately implemented due to other pending proposals. 16 U.S.C. § 1533(b)(3)(B).

38.    Defendants made a belated 90-day finding on Plaintiff's Petition on April 10, 2015. *See* 80 Fed. Reg. 19,259, 19,261.  But they still have not issued a 12-month finding as required by the ESA.  16 U.S.C. § 1533(b)(3)(B).

39.    Defendants' failure to make a 12-month finding on Plaintiff's Petition in the manner required by 16 U.S.C. § 1533(b)(3)(B) violates the ESA and is unlawful.

**SECOND CAUSE OF ACTION**
**(Violation of APA, 5 U.S.C. § 706(1),**
**Unlawfully Withholding or Unreasonably Delaying Agency Action)**

40.    Plaintiff re-alleges the allegations contained in Paragraphs 1 through 35 as though fully set forth herein.

41.    The ESA requires Defendants, "[w]ithin 12 months after receiving a petition that is found . . . to present substantial information indicating that the petitioned action may be warranted" and then Defendants must make and publish one of the following findings in the Federal Register: (i) The petitioned action is not warranted; (ii) the petitioned action is warranted and a proposed

regulation implementing the action; or (iii) the petitioned action is warranted, but cannot be immediately implemented due to other pending proposals. 16 U.S.C. § 1533(b)(3)(B).

42.   Defendants made a 90-day finding on Plaintiff's Petition on April 10, 2015.  *See* 80 Fed. Reg. 19,259, 19,261.  But they still have not issued a 12-month finding as required by the ESA, 16 U.S.C. § 1533(b)(3)(B).

43.   Defendants' failure to make a 12-month finding on Plaintiff's Petition constitutes agency action unlawfully withheld or unreasonably delayed in violation of 5 U.S.C. § 706(1).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment from this Court as follows:

1.   A declaratory judgment under 28 U.S.C. §§ 2201(a) and 2202 determining and declaring that Defendants' failure to comply with their nondiscretionary duty to make a 12-month finding on Plaintiff's Petition is a violation of the ESA;

2.   A declaratory judgment under 28 U.S.C. §§ 2201(a) and 2202 that Defendants' failure to comply with their nondiscretionary duty to make a 12-month finding on Plaintiff's Petition constitutes agency action unlawfully withheld in violation of the APA;

3.   A mandatory injunction compelling Defendants to make a 12-month finding on Plaintiff's Petition by a date certain;

4.   An award to Plaintiff of reasonable attorney fees and expert fees in bringing and maintaining this action pursuant to 16 U.S.C. § 1540(g)(4);

5.   An award to Plaintiff of costs of suit pursuant to Federal Rule of Civil Procedure 54(d); and

6.   An award to Plaintiff of any other relief that the Court deems just and proper under the circumstances of this case.

DATED:  July 20, 2017.

By: /s/ Jonathan Wood

CHRISTINA M. MARTIN
Fla. Bar No. 0100760
*Of Counsel*
Pacific Legal Foundation
8645 N. Military Trail
Suite 511
Palm Beach Gardens, FL 33410
Telephone: (561) 691-5000
E-mail: cmm@pacificlegal.org

JONATHAN WOOD
D.C. Bar No. 1045015
*Counsel of Record*
Pacific Legal Foundation
3033 Wilson Blvd, Suite 700
Arlington, VA 22201
Telephone: (202) 888-6881
E-mail:  jw@pacificlegal.org

*Counsel for Plaintiff*

# EXHIBIT 1



**American Federation of Aviculture, Inc.**
**P. O. Box 91717**
**Austin, Texas 78709**
**Phone: 512-585-9800**
**Fax: 512-858-7829**

**August 20, 2014**

**Hard copy mailed via USPS Priority Mail**
**PDF copy emailed to:   managementauthority@fws.gov**

**Director, Fish and Wildlife Service**
**Division of Management Authority - Branch of Permits**
**U.S. Fish & Wildlife Service Headquarters**
**MS: IA**
**5275 Leesburg Pike**
**Falls Church, VA 22041-3803**

**Re:  Endangered and Threatened Wildlife and Plants - Petition of American Federation of Aviculture and Affiliates to Delist the Golden Conure (guaruba guarouba) from the List of Endangered Species under the Endangered Species Act ( 7 U.S.C. § 136, 16 U.S.C. § 1531 et seq.).**

**Dear Sirs,**

**The American Federation of Aviculture, on our own behalf and on behalf of our Affiliates, hereby submits the attached petition to delist the Golden Conure (guaruba guarouba) from the List of Endangered Species under the Endangered Species Act ( 7 U.S.C. § 136, 16 U.S.C. § 1531 et seq.).**

**Our position and request for this debiting is supported by the best scientific and commercial data currently available as noted in the attached petition.**

**We request that the Service review the status of the Golden Conure, and promptly issue a finding that the debiting of the Golden Conure from the List of Endangered Species under the Endangered Species Act  is warranted.**

**Alternatively, if the Service deems that the debiting of the Golden Conure is not warranted, then we request that the Golden Conure be down-listed to Threatened status, with a special rule, as has been provided for the Salmon-Crested Cockatoo (Cacatua malaccensis), with the same or substantially similar import and export and interstate commerce provisions that have been provided for the Salmon-Crested Cockatoo, as more fully described at:**

American Federation of Aviculture, Inc.
August 20, 2014
Re:  Endangered and Threatened Wildlife and Plants - Petition of American Federation of Aviculture and Affiliates to Delist the Golden Conure (guaruba guarouba) from the List of Endangered Species under the Endangered Species Act ( 7 U.S.C. § 136, 16 U.S.C. § 1531 et seq.).
2

http://www.regulations.gov/#!documentDetail;D=FWS-R9-IA-2009-0056-0017

The American Federation of Aviculture, Inc. stands ready to assist FWS in crafting reasonable and effective solutions to problems facing endangered species.   This particular debiting (or down-listing) is reasonable and will help the Golden Conure survive as a species.

We look forward, on behalf of the millions of citizens of the U.S. who enjoy the companionship of their pet birds and on behalf of those who breed birds in the U.S. both for pet purposes and for conservation purposes, to the Secretary and the Fish and Wildlife Service recognizing and acting on our concerns.

If you have any questions, or if we can be of further assistance, please do not hesitate to contact our Conservation Chair, Rick Jordan, or our Legislative Vice President, Genevieve Wall, Attorney at Law.   You can reach Mr. Jordan by email at afaoffice@earthlink.net, and you can reach Ms. Wall by mail at 24031 El Toro Road, Suite 200, Laguna Hills, CA 92653, or by email to gwlawco@aol.com or by telephone to (949) 574-4079.

Very truly yours,

AMERICAN FEDERATION OF AVICULTURE, INC.


Nancy Speed,                            Genevieve Wall,                        Rick Jordan,
President                                  Legislative Vice President          Conservation Chair


cc:     Roddy Gabel, Chief, Division of Management Authority

cc:     The Honorable Sally Jewel, Secretary of the Interior

---

Footnote 1:

The American Federation of Aviculture (AFA) is a nonprofit national organization established in 1974, whose purpose is to represent all aspects of aviculture and to educate the public about keeping and breeding birds in captivity.   AFA supports public and private programs that are designed to support conservation of birds in the wild.

AFA represents the interests of more than 10,000 people who are our members and members of our affiliated clubs and affiliated businesses.   AFA has a broad  membership consisting of bird breeders, pet bird owners, veterinarians, pet/bird store owners, bird product manufacturers, and many other people who are interested in the future of birds and aviculture and who own and breed the many species of birds in aviculture.   There are millions of U.S. households who keep birds.

AFA promotes and encourages the humane husbandry, care, and breeding of birds.   While AFA speaks to and for the interests of the birds themselves, AFA also speaks to and for the interests of the millions of U.S. households and individuals who own birds, the thousands of businesses and professionals who provide those bird owners with goods and services, and the birds and families who rely on the continued existence of those businesses and professionals not only for their own livelihood, but so that they will all be able to continue to humanely keep their birds.

Our members, affiliates, and associates in aviculture in the United States own and maintain many hundreds of separate species of exotic birds.    AFA recognizes that there is no "one-size-fits-all" husbandry program for the humane keeping, breeding, care, and husbandry of the many species of  exotic birds currently kept by aviculturists worldwide.  AFA is proud to include in its membership many experts who have long term, hands-on experience with many species of birds, and who can, and do, provide the public and our government with current reliable information regarding the humane keeping, breeding, care, and husbandry of exotic birds.

Aviculturists who maintain the many species of exotic birds now in captivity in the U.S. have the extensive knowledge and expertise required to keep, breed, and care for birds in captivity.   Aviculturists serve an important role in the preservation of species, and in some cases aviculturists are the only hope for the long term survival of many of those species at risk for extinction in their native lands.

**Petition of the American Federation of Aviculture and Affiliates to Delist the Golden Conure from the
List of Endangered Species under the Endangered Species Act**

## 1. INTRODUCTION

The American Federation of Aviculture  and its affiliates petition the US Fish and Wildlife Service (FWS)
to expeditiously remove the Golden Conure (*Guaruba guarouba*) from the list of Endangered Wildlife
under the Endangered Species Act (ESA), as amended.

We show in this petition that the original listing of the Golden Conure as Endangered was not done in
accordance with the procedures required by the ESA in Section 4(a).  As a result, this species, the other
psittacine species that were improperly listed, and indeed <u>all</u> of the 159 taxa that were improperly listed
should be removed from listing as Endangered under the ESA until such time as a proper evaluation of
the status of each species can be performed.

Furthermore, we show that the present status of the Golden Conure clearly demonstrates that the
species cannot be properly classified at present as either Endangered or even Threatened under the
ESA.  This further supports our request that the species be immediately  delisted from under the ESA.

At a minimum, if the FWS refuses to completely remove the Golden Conure from listing, the petitioners
then petition the FWS to reclassify the Golden Conure from "Endangered" to "Threatened" with a
Special Rule put in place to include the Golden Conure among the species in the parrot family to which
50 CFR 17.41(c) applies, including the provision that certain acts in interstate commerce of Golden
Conures may proceed without a permit under the Act.  Such final special rule, if listing of the species as
"Threatened" is deemed appropriate, would allow import and export of certain Golden Conures and
interstate commerce of this species without a permit under the ESA.

In more detail, this special rule would apply, require, and allow the following.  It would apply to all
commercial and noncommercial international shipments of live Golden Conures and parts and products,
including the import and export of personal pets and research samples. It would allow a person to
import or export a specimen that was held in captivity prior to the date this species was listed under the
ESA or that was captive-bred, provided the import is authorized under CITES and the WBCA and export
is authorized under CITES. The terms ``captive-bred'' and ``captivity'' used in the final special rule are
defined in the regulations at 50 CFR 17.3 and refer to wildlife produced in a controlled environment that
is intensively manipulated by man from parents that mated or otherwise transferred gametes in
captivity. The special rule would apply to birds captive-bred in the United States and abroad. Import and
export of specimens that have been held in captivity prior to the date this species was listed under the
ESA or that were captive-bred would be allowed without a permit under the ESA provided the provisions
of CITES and the WBCA are met. With respect to captive-bred specimens, the CITES export permits
would need to indicate that the specimen was not taken from the wild by using a source code on the
face of the permit other than U (unknown) or W (taken from the wild). If the specimen was taken from

the wild prior to the date this species was listed under the ESA, the importer or exporter would need to demonstrate that the Golden Conure was taken from the wild prior to that date. Under the special rule, a person would need to provide records, receipts, or other documents when applying for permits under CITES and the WBCA to show the specimen was held in captivity prior to the date this species was listed under the ESA.

Scientific and common name of the species:  According the IUCN nomenclature [1], the presently accepted scientific name for this species is  *Guaruba guarouba*  known in English as Golden Parakeet, Golden Conure, and, in US aviculture, the  Queen of Bavaria Conure.   In the US Fish and Wildlife Species ECOS (Environmental Environmental Conservation Online System) profile page the species is listed as Golden parakeet, *Aratinga guarouba*. [2]   Any of these shall be considered synonyms for the purpose of this petition.  Other names listed in the BirdLife International species fact sheet for this species shall also be considered synonyms. [3]

## 2. BACKGROUND

On May 22, 1975, the Fund for Animals, Inc. (Fund), an animal rights organization against keeping most species of animals in captivity or as pets, submitted a petition to the FWS to list as Endangered under the ESA 216 taxa of animals and plants that were listed in Appendix I of the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES) and that did not already appear on the U.S. Lists of Endangered Wildlife and Plants (Lists). The Fund contended that signature and ratification of CITES by the United States was an acknowledgment of the endangered status of these species and that they therefore should appear on the Lists pursuant to the Act [4].

In response to this petition, the Golden Conure (and the other species mentioned in the petition) was proposed by the FWS to be listed as "Endangered" under the ESA.  In the "Proposed Endangered Status for 216 Species Appearing on Convention on International Trade" ( Federal Register, vol. 40, 44329-44333, Sept 26, 1975, [5]) the FWS wrote that responding to the petition would be a large undertaking because of its  *" involving (1) the preparation of necessary status information on these species, (2) the preparation of environmental assessments and (3) consultations with States, foreign countries and others as required by the Endangered Species Act."*  In this publication in the Federal Register they requested submittal to them of written comments regarding this proposed action.

The Final Ruling was published in the Federal Register of June 14, 1976 (Federal Register vol. 41, 24062-24067 [6]) "Endangered Status for 159 Taxa of Animals." One hundred fifty nine species, including the Golden Conure, were decreed listed as Endangered under the ESA.  In the FWS summary of comments received in reply to the first proposal, there is no mention that any comments were received for any of the psittacine species, including the Golden Conure. There is also no evidence that any of the above mentioned required status information was acquired in any other way for any of the psittacine species; instead, FWS apparently used for their listing decisions for psittacines (as well as other species not the subject of this petition) the fact that they happened to be on Appendix I of CITES -- which only indicated that international trade might be deleterious to the species and should be regulated, not that the

species was actually in "danger of extinction throughout all or a significant portion of its range" as required by the ESA in Sec. 3(6). It is thus clear that the listing as Endangered of the Golden Conure and other psittacine species (and all other listed species) was not properly undertaken and should immediately be declared null and void until a proper review of the status of each of the taxa is undertaken by the FWS.

In addition, Section 4(c)(2) of the ESA requires that the status of each species on the lists of Endangered and Threatened Wildlife be reviewed at least every 5 years to determine whether any species should be removed from the list (delisted), reclassified from endangered to threatened (downlisted), or reclassified from threatened to endangered (uplisted). Since this has not been done over the 38 years that the species has been listed, review of the status of the species is long overdue.

## 3. JUSTIFICATION FOR DELISTING OR DOWNLISTING

Until 2012, BirdLife International and the International Union for the Conservation of Nature (IUCN) classified the species as "endangered." The IUCN has rigorous and objective criteria that it uses to classify species into the categories that include Extinct, Extinct in the Wild, Critically Endangered, Endangered, Vulnerable, Near Threatened, Least Concern, Data Deficient, and Not Evaluated which under IUCN usage of the term [7] means (emphasis by underlining is ours):

> *ENDANGERED (EN)*
> *A taxon is Endangered when the best available evidence indicates that it meets any of the following criteria (A to E), and it is therefore considered to be facing a very high risk of extinction in the wild:*
> *A. Reduction in population size based on any of the following:*
> *1. An observed, estimated, inferred or suspected population size reduction of ≥ 70% over the last 10 years or three generations, whichever is the longer, where the causes of the reduction are clearly reversible AND understood AND ceased, based on (and specifying) any of the following:*
> *(a) direct observation*
> *(b) an index of abundance appropriate to the taxon*
> *(c) a decline in area of occupancy, extent of occurrence and/or quality of habitat*
> *(d) actual or potential levels of exploitation*
> *(e) the effects of introduced taxa, hybridization, pathogens, pollutants, competitors or parasites.*
> *2. An observed, estimated, inferred or suspected population size reduction of ≥ 50% over the last 10 years or three generations, whichever is the longer, where the reduction or its causes may not have ceased OR may not be understood OR may not be reversible, based on (and specifying) any of (a) to (e) under A1.*
> *3. A population size reduction of ≥nbsp;50%, projected or suspected to be met within the next 10 years or three generations, whichever is the longer (up to a maximum of 100 years), based on (and specifying) any of (b) to (e) under A1.*
> *4. An observed, estimated, inferred, projected or suspected population size reduction of ≥ 50% over any 10 year or three generation period, whichever is longer (up to a maximum of 100 years in the future), where the time period must include both the past and the future, and where the reduction or its causes may not have ceased OR may not be understood OR may not be reversible, based on (and specifying) any of (a) to (e) under A1.*

*B. Geographic range in the form of either B1 (extent of occurrence) OR B2 (area of occupancy) OR both:*

*1. Extent of occurrence estimated to be less than 5000 km$^2$, and estimates indicating at least two of a-c:*

*a. Severely fragmented or known to exist at no more than five locations.*

*b. Continuing decline, observed, inferred or projected, in any of the following:*

*(i) extent of occurrence*

*(ii) area of occupancy*

*(iii) area, extent and/or quality of habitat*

*(iv) number of locations or subpopulations*

*(v) number of mature individuals.*

*c. Extreme fluctuations in any of the following:*

*(i) extent of occurrence*

*(ii) area of occupancy*

*(iii) number of locations or subpopulations*

*(iv) number of mature individuals.*

*2. Area of occupancy estimated to be less than 500 km$^2$, and estimates indicating at least two of a-c:*

*a. Severely fragmented or known to exist at no more than five locations.*

*b. Continuing decline, observed, inferred or projected, in any of the following:*

*(i) extent of occurrence*

*(ii) area of occupancy*

*(iii) area, extent and/or quality of habitat*

*(iv) number of locations or subpopulations*

*(v) number of mature individuals.*

*c. Extreme fluctuations in any of the following:*

*(i) extent of occurrence*

*(ii) area of occupancy*

*(iii) number of locations or subpopulations*

*(iv) number of mature individuals.*

*C. Population size estimated to number fewer than 2500 mature individuals and either:*

*1. An estimated continuing decline of at least 20% within five years or two generations, whichever is longer, (up to a maximum of 100 years in the future) OR*

*2. A continuing decline, observed, projected, or inferred, in numbers of mature individuals AND at least one of the following (a-b):*

*(a) Population structure in the form of one of the following:*

*(i) no subpopulation estimated to contain more than 250 mature individuals, OR*

*(ii) at least 95% of mature individuals in one subpopulation.*

*(b) Extreme fluctuations in number of mature individuals.*

*D. Population size estimated to number fewer than 250 mature individuals.*

*E. Quantitative analysis showing the probability of extinction in the wild is at least 20% within 20 years or five generations, whichever is the longer (up to a maximum of 100 years).*

In 2013, the species was downlisted by Birdlife International [3] and the IUCN [1] from Endangered to Vulnerable (also see [7] for classification criteria for Vulnerable, NearThreatened, and Least Concern) because a review of recently available information indicated its population was considerable larger than previously believed.  The Birdlife International Fact Sheet for the species [3] indicates the listing as

Vulnerable was "precautionary" in nature, thus indicating a downlisting to NearThreatened or even Least Concern could have been considered but apparently was too large a step down for the evaluators.

## 3. ADDITIONAL BIOLOGICAL INFORMATION

All of this following information  has been quoted or summarized from Reference [3], which is substantially the same as in Reference [1]. Those References should be considered additional supplementary information for this petition.  Particularly relevant information for this petition to delist has been underlined by the petitioners.

Distribution and Population (see Figure)

*Guaruba guarouba is endemic to Brazil, where most records come from between the Tocantins, lower Xingú and Tapajós rivers in the Amazon Basin of Pará. There are additional records from adjacent northern Maranhão, Rondônia, Mato Grosso), and Amazonas.  It is described as 'not uncommon' around the municipality of Paragominas. It was previously estimated to number fewer than 2,500 individuals; however, more recent information suggests the population is larger than this. Based on the results of surveys along the Tapajós river, a very conservative extrapolation of 1 individual per 16 km² in 174,000 km² of suitable habitat within the known Extent of Occurrence gives an estimate of c.10,875 individuals (…), thus it is now placed in the band 10,000-19,999 individuals.*

Population justification

*The population was previously estimated to number 1,000-2,499 individuals, based on an assessment of known records, descriptions of abundance and range size. However, recent information suggests the population may be larger than this. The species has been recorded at several additional locations (…) and a recent survey along the Tapajós river … indicated that it was as common in the study area as other, non-threatened Psittacids. The population in this study area (a strip of c.340 km along the Tapajós river, western Pará), which encompasses no more than 5% of the total area of suitable habitat for the species, was estimated at 500 individuals, representing the largest known population. A highly conservative extrapolation of 1 individual per 16 km² across 174,000 km² of suitable habitat within the known Extent of Occurrence gives an estimate of c.10,875 individuals …. On the basis of this information, the population is placed in the band for 10,000-19,999 individuals, assumed to include c.6,600-13,400 mature individuals.*

Trend  justification

*This species is suspected to lose 23.3-30.9% of suitable habitat within its distribution over three generations (22 years) based on a model of Amazonian deforestation…. Given the susceptibility of the species to hunting and/or trapping, it is therefore suspected to decline by ≥30% over the next three generations. It should be noted, however, that this may be rather precautionary, as trapping of this species for trade (although extensive in the past) is no longer thought to have a significant impact on the wild population …. In addition, its level of forest-dependence is regarded as not as high as some non-threatened Psittacids in the region….*

Ecology

*It is apparently nomadic in lowland humid forest. In the dry season, it frequents the canopy of tall "terra firme" (not flooded) forest but, in the breeding season, appears to inhabit clearings with few scattered trees. Tree-cavities are used for nesting and roosting. It feeds on fruit, berries, seeds and nuts and, seasonally, on crops (especially maize, which ripens immediately before fledging). Breeding generally occurs between December and April, but has been noted in October. Breeding is apparently communal, with several females contributing two or three eggs to each nest and several adults caring for the young. Up to nine young have been recorded in a nest in the wild, and up to 14 in captivity.*

Threats

*Habitat destruction and fragmentation as a result of road construction, subsequent development and settlement, with accompanying illegal logging, are threats in the east of its range. Selective logging of primary hardwoods removes suitable roosting and nesting cavities.…. However, the species is not as forest-dependent as several other non-threatened Psittacid species in the region, and it is capable of commuting between multiple forest-patches and moving around non-forest landscapes …. In addition, the majority of remaining suitable habitat is not as fragmented as originally thought and much of this is under protection …. Nevertheless, projected rates of deforestation within its range, based on forecasts of infrastructure development done in 2006, suggest that the species will be impacted over the coming decades …. It has been extensively trapped for trade, but, although some illegal trade persists, this is no longer a major concern as trade is now usually within the substantial captive population, and does not have a significant impact on the wild population.…*

Conservation Actions Underway

*CITES Appendix I and II, managed under the Association of Zoos and Aquaria's Parrot Taxon Advisory Group and protected under Brazilian law (and has been proposed as the national bird of Brazil). A campaign tackling bird trade in Bolivia may help curtail international trade.  A population is relatively well-protected in Tapajós National Park, and a remnant population may survive in Gurupi Biological Reserve. Jamari National Forest is poorly protected and has suffered pressure from squatters, loggers and poachers in the past. Conservation of this species in reserves is problematic because of its apparent nomadism.*

**Conservation Actions Proposed**

*Conduct surveys to search for previously unknown populations, especially in the south and west of its range. Ensure the de facto protection of Gurupi Biological Reserve. Maintain the integrity of Tapajós National Park. Protect and manage land between existing protected areas to facilitate nomadic movements. Enforce legal restrictions on trade, especially in internal markets. Further develop the captive breeding programme.*

**4. SUMMARY**

The information quoted in this petition demonstrates that the initial listing of the Golden Conure as "Endangered" in 1976 was invalid because it was made without appropriate evaluation of the best scientific and commercial evidence available, as is required by the Endangered Species Act. Along with 248 other species, it was simply listed in response to a petition by an animal rights (not animal conservation) organization.  Furthermore, we found no evidence that the listing of the Golden Conure as Endangered had ever been reviewed by FWS personnel in the 38 years it has been listed.  Such re-evaluation at least every 5 years is required by the ESA.

In 2012 a review by BirdLife International and accepted by the IUCN of the conservation status of the Golden Conure provided substantial scientific and commercial evidence that the Golden Conure does not qualify as Endangered under the meaning of the ESA and probably not even as Threatened under the meaning of the Act. We summarize in the following paragraphs the conservation status of the Golden Conure according to the factors listed in Section 4(a)(1) of the ESA.

(A) Destruction, modification, curtailment of habitat:
The eastern part of the species' range has been deforested but much of the rest of its range is in sustainable use and protected status.  However, according to BirdLife International, "*the species is not as forest-dependent as several other non-threatened Psittacid species in the region, and it is capable of commuting between multiple forest-patches and moving around non-forest landscapes…. In addition, the majority of remaining suitable habitat is not as fragmented as originally thought and much of this is under protection*." A graphical overview of the status of the species' range is given in the Figure. Note in particular that the Amazon Protected Areas Program (ARPA)[8] is increasing protection of extensive areas in the known range of the species and nearby areas in which the Golden Conure may be found. Fortunately, habitat modification/destruction is not likely to be a serious threat to the species in the future. Hence Factor A is not presently a significant factor imperiling the existence of the species.

(B) Overutilization for commercial…purposes:
Overutilization for trade has now declined to unimportant levels, as Birdlife International reports that "*although some illegal trade persists, this is no longer a major concern as trade is now usually within the substantial captive population, and does not have a significant impact on the wild population.*" According to aviculturists queried in the United States, the species is easily bred and thus Brazilian breeders are likely to be able to supply demand for the species. In fact, BirdLife International and IUCN recommend enhanced captive propagation of the species. The factor of overutilization is no longer a significant problem for the species.

(C) Disease or predation
Neither has ever been reported as a significant factor with this species

(D) Inadequacy of existing regulatory mechanisms

It is generally agreed that Brazil has one of the most extensive set of environmental laws in the world, but their effectiveness is admittedly compromised through inadequate implementation and enforcement. This appears to have been gradually improving over the decades through the establishment and funding of environmental institutes and internationally supported projects such as ARPA mentioned above.  A positive tone was evidenced by a UNEP/Interpol assessment "The Environmental Crime Crisis":

> *Brazil is probably one of the world's leading countries in a wide enforcement effort to reduce illegal deforestation by tackling the full criminal chain and their networks. Deforestation in Brazil's Amazon reached its lowest level in 2012, since monitoring of the forest began in 1988. It went down by 64–78%, depending upon estimates, primarily as a result of a coordinated enforcement approach using satellite imagery and targeted police operations and investigations. This was supported by large-scale efforts through REDD and other initiatives to strengthen the participatory processes of indigenous peoples, stake holders and alternative livelihoods. Many parts of the world could learn from the measures and actions undertaken by Brazil.*

Thus one can say the existing regulatory mechanisms in place to protect the Golden Conure and its habitat do exist and can be expected to improve over time.  The most important issue will be protection of habitat, but all indications point towards promising developments and the species itself is flexible in its habitat usage and willingly makes local migrations between suitable localized habitats.  Hence Factor D is not an issue with the Golden Conure.

E. Other natural or manmade factors affecting its continued existence
The review by BirdLife International and the IUCN of the status of the Golden Conure indicated that manmade factors are actually *improving* the continued existence of the species because of extensive captive breeding in Brazil, in the United States, and possibly elsewhere.

5. CONCLUSIONS

According to the Endangered Species Act, an "endangered species" is an animal (or plant) listed by regulation as being in danger of extinction throughout all or a significant portion of it range. A "threatened species" is any animal (or plant) likely to become endangered in the foreseeable future throughout all or a significant portion of its range. Five factors are given that need be considered in deciding if a species is a candidate for listing under the Act.

At the time of listing in 1976, none of these factors were considered.  Hence the Golden Conure was erroneously listed under the Act and should be immediately removed until such time as a proper consideration of the factors indicates that the species qualifies for listing. But the species does not qualify for listing. None of the factors that the ESA requires be considered to establish if a species be placed on the ESA Threatened or Endangered Lists indicate that the species is threatened or endangered under the meaning of the Act.  While the IUCN now considers the species to be Vulnerable under its categorization rules, the Birdlife International Fact Sheet for the species [3] indicates the listing as

Vulnerable was "precautionary" in nature, thus indicating a downlisting to NearThreatened or even Least Concern could have been considered but apparently was too large a step down for the evaluators.

The petitioner(s) thus request that the Golden Conure, *Guaruba guarouba* be removed as expeditiously as possible from listing as Endangered under the ESA and that all previously required permitting requirements for domestic interstate trade be removed.

If the petition to remove from listing is not granted, the petitioners then request that the species be downlisted to "Threatened" under the Endangered Species Act and a special rule be established to include the Golden Conure among the species in the parrot family to which 50 CFR 17.41(c) applies, including the provision that certain acts in interstate commerce of Golden Conures may proceed without a permit under the Act.  Such special rule, if listing of the species as "Threatened" is deemed necessary, would allow import and export of certain Golden Conures and interstate commerce with this species without a permit under the ESA.

## 6. THE PETITIONERS

The American Federation of Aviculture (AFA) is a nonprofit national organization established in 1974, whose purpose is to represent all aspects of aviculture and to educate the public about keeping and breeding birds in captivity.   AFA supports public and private programs that are designed to support conservation of birds in the wild.

AFA represents the interests of more than 10,000 people who are our members and members of our affiliated clubs and affiliated businesses.  AFA has a broad  membership consisting of bird breeders, pet bird owners, veterinarians, pet/bird store owners, bird product manufacturers, and many other people who are interested in the future of birds and aviculture and who own and breed the many species of birds in aviculture.   There are millions of U.S. households who keep birds.

AFA promotes and encourages the humane husbandry, care, and breeding of birds.   While AFA speaks to and for the interests of the birds themselves, AFA also speaks to and for the interests of the millions of U.S. households and individuals who own birds, the thousands of businesses and professionals who provide those bird owners with goods and services, and the birds and families who rely on the continued existence of those businesses and professionals not only for their own livelihood, but so that they will all be able to continue to humanely keep their birds.

Our members, affiliates, and associates in aviculture in the United States own and maintain many hundreds of separate species of exotic birds.   AFA recognizes that there is no "one-size-fits-all" husbandry program for the humane keeping, breeding, care, and husbandry of the many species of exotic birds currently kept by aviculturists worldwide.   AFA is proud to include in its membership many experts who have long term, hands-on experience with many species of birds, and who can, and do, provide the public and our government with current reliable information regarding the humane keeping, breeding, care, and husbandry of exotic birds.

Aviculturists who maintain the many species of exotic birds now in captivity in the U.S. have the extensive knowledge and expertise required to keep, breed, and care for birds in captivity.   Aviculturists serve an important role in the preservation of species, and in some cases aviculturists are the only hope for the long term survival of many of those species at risk for extinction in their native lands.

## 6. References

[1] http://www.iucnredlist.org/details/22724703/0  BirdLife International 2013. *Guaruba guarouba*. The IUCN Red List of Threatened Species. Version 2014.1. <www.iucnredlist.org>. Downloaded on 21 June 2014.

[2] http://ecos.fws.gov/speciesProfile/profile/speciesProfile.action?spcode=B05B Downloaded 30 June 2014.

[3] http://www.birdlife.org/datazone/speciesfactsheet.php?id=9847. BirdLife International (2014) Species factsheet: *Guaruba guarouba*. Downloaded from http://www.birdlife.org on 30 June 2014.

[4] As quoted in [5], as a copy of the actual petition could not be obtained from either the Fish and Wildlife Service or the Humane Society of the US, which took over the Fund for Animals in 2005.

[5] http://ecos.fws.gov/docs/federal_register/fr71.pdf  Downloaded  21 June 2014.

[6] http://ecos.fws.gov/docs/federal_register/fr103.pdf  Downloaded 21 June 2014.

[7]  http://www.iucnredlist.org/static/categories_criteria_3_1#critical   Downloaded on 21 June 2014.

[8] http://news.mongabay.com/2014/0521-hance-arpa-funding.html

 [9] "The Environmental Crime Crisis," 2014  http://www.unep.org/unea/docs/rracrimecrisis.pdf Downloaded 20 June 2014.

Figure. Map of the known present and former range of the Golden Conure.  The species is likely to exist in additional unsurveyed areas. (Upper panel, [3]). The lower panel shows the protection status of the Amazonian Biome, with the known distribution of the Golden Conure outlined. Note significant portions of its range and areas outside its range in which it is likely to be found have sustainable use or protected status and that considerable additional lands have been added by the multi-nation, multi-institution Amazon Protected Areas Program (ARPA) [8]



# EXHIBIT 2



# United States Department of the Interior

FISH AND WILDLIFE SERVICE
Washington, D.C. 20240
**JUN 0 6 2017**

In Reply Refer To:
FWS/AES/DCC/BFS/065830

Christina M. Martin
Attorney
Pacific Legal Foundation
8645 N Military Trail Suite 511
Palm Beach Gardens, Florida  33410

Dear Ms. Martin:

On April 17, 2017, the United States Fish and Wildlife Service (Service) received your notice of intent to sue, dated April 11, alleging violations of the Endangered Species Act (ESA) concerning the timing of a 12-month finding on the American Federation of Aviculture's (AFA) petition to remove the golden conure (*Guaruba guarouba*) from the list of threatened and endangered wildlife, or alternatively, to reclassify the species from endangered to threatened.

The Service received the petition on August 21, 2014.  We published a 90-day finding on the petition in the *Federal Register* on April 10, 2015.  In that notice, the Service stated that the petition presented substantial information indicating that the petitioned action may be warranted, and thus we commenced a status review of the species to make a 12-month finding as to whether the petitioned action is warranted. The Service considers this review of the status of the species to also fulfill the 5-year review requirements under section 4(c)(2) of the ESA.

We currently plan to complete a 12-month finding on the petition by the end of fiscal year 2018.  This action is a priority amongst several pending recovery reviews for foreign species.  In ensuring that our 12-month finding for the golden conure is based on the best available scientific and commercial data, please be assured that our review will include careful consideration of information submitted during the public comment period, trade data, and the opinion of species experts.  If you have any new information to inform our 12-month finding, please provide it to Janine Van Norman, Chief, Branch of Foreign Species, at (703) 358-2370 or janine_vannorman@fws.gov.

Thank you for your interest in conserving this species.  If you have any questions, please contact Mrs. Van Norman.

Sincerely,

*Ben Thatche*

ACTING
Gina Shultz
Deputy Assistant Director for
Ecological Services

# EXHIBIT 3



# PACIFIC LEGAL FOUNDATION

April 11, 2017

Mr. Ryan Zinke
Secretary of the Interior
United States Department of the Interior
1849 C Street, N.W.
Washington, DC  20240

**VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Mr. Jim Kurth
Acting Director, U.S. Fish & Wildlife Service
United States Department of the Interior
1849 C Street, N.W.
Washington, DC  20240

Ms. Cindy Dohner
Regional Director, Southeast Region
United States Fish & Wildlife Service
1875 Century Blvd., Suite 400
Atlanta, GA  30345

Re:   60-Day Notice of Intent To Bring a Citizen Suit Under the
      Endangered Species Act To Compel 12-Month Finding on
      Petition To Delist the Golden Conure (*Guaruba Guarouba*)

Dear Mr. Zinke, Mr. Kurth, & Ms. Dohner:

Pursuant to Section 11(g) of the Endangered Species Act (ESA), 16 U.S.C. § 1540 (g), this letter
provides notice of intent to commence civil litigation for violation of Section (4)(b)(3) of the Act,
16 U.S.C. § 1533 (b), governing the reclassification of species.  The American Federation of
Aviculture intends to file suit after 60 days if the Secretary of the Interior and the Fish & Wildlife
Service (Service) continue to violate statutory requirements for responding to a petition to delist
the golden conure (*Guaruba guarouba*) also known as the golden parakeet (*Aratinga guarouba*).

**INTEREST OF PARTY**

The American Federation of Aviculture (AFA), a nonprofit national organization incorporated in
California, was established in 1974 to represent all aspects of aviculture and to educate the public
about keeping and breeding birds in captivity.  AFA supports public and private programs that

**HEADQUARTERS:** 930 G Street  |  Sacramento, CA 95814  |  (916) 419-7111  |  fax (916) 419-7747
**ATLANTIC:** 8645 N. Military Trail, Suite 511  |  Palm Beach Gardens, FL 33410  |  (561) 691-5000  |  fax (561) 691-5006
**DC:** 3033 Wilson Boulevard, Suite 700  |  Arlington, VA 22201  |  (202) 888-6881  |  fax (202) 888-6855
**HAWAII:** P.O. Box 235856  |  Honolulu, HI 96823-3514  |  (808) 733-3373  |  fax (808) 733-3374
**NORTHWEST:** 10940 NE 33rd Place, Suite 210  |  Bellevue, WA 98004  |  (425) 576-0484  |  fax (425) 576-9565
**ALASKA:** (907) 278-1731  |  **OREGON:** (503) 241-8179

**E-MAIL:** plf@pacificlegal.org
**WEB SITE:** www.pacificlegal.org

Mr. Ryan Zinke
Mr. Jim Kurth
Ms. Cindy Dohner
April 11, 2017
Page 2

support conservation of birds in the wild as well as humane husbandry, care, and breeding of birds. AFA also represents the interests of more than 10,000 members, including bird breeders, pet bird owners, veterinarians, pet store owners, bird product manufacturers, and many other people who are interested in the future of birds and aviculture, and who own and breed the many species of birds in aviculture.

AFA members own and maintain many hundreds of separate species of exotic birds, including golden conures. Many AFA members are experts with long-term, hands-on experience with various species of birds. Aviculturists serve an important role in the preservation of species, and in some cases are the only hope for the long term survival of species at risk for extinction in their native lands.

## NATURE OF CHALLENGE

In 1976, the Service listed the golden conure as endangered under the Endangered Species Act. 41 Fed. Reg. 24,062, 24,066. In August, 2014, the AFA filed a petition with the Service to delist the golden conure, or in the alternative, downlist it to threatened. The petition relied partly on research cited by the International Union for Conservation of Nature (IUCN) that shows scholarly estimates of the bird's population have grown from 1,000-2,500 to 10,000-20,000 birds today. It appears the Service has never conducted any statutorily required status review for the bird.

On April 10, 2015, the Service issued a 90-day finding that the AFA's petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted for the golden conure. 80 Fed. Reg. 19,259, 19,261. Under Section 4 of the ESA, the Service then had 12 months to make one of three findings: (1) the petitioned action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is warranted, but pending proposals preclude immediate promulgation of a final regulation. More than 2 years later, the FWS still has not issued a required 12-month finding.

The FWS's failure to act on the petition violates the ESA and is counterproductive to the conservation of the golden conure. Current FWS regulations unnecessarily restrict breeders' ability to breed and sell captive populations of the golden conure across state lines. These restrictions limit the genetic pool available for breeders, and make it more difficult and expensive to breed and sell golden conures to each other and to the public. According to scholarship, one of the reasons why the threat of trapping has dropped is that breeders are successfully meeting market demand. But permit requirements for the captive populations impede that effort.

Mr. Ryan Zinke
Mr. Jim Kurth
Ms. Cindy Dohner
April 11, 2017
Page 3


Accordingly, existing FWS regulations hurt breeders who are helping protect the wild population of golden conures. The FWS should act on the petition and delist, or exempt breeders from permit requirements.

## CONCLUSION

The law required the Service to issue a 12-month finding, by April 10, 2016, but the Service has still not complied.  This letter notifies you that AFA will seek redress in court if you do not issue a 12-month finding within the next 60 days.

Respectfully submitted,

By: _____
CHRISTINA M. MARTIN
Attorney
M. REED HOPPER
Senior Attorney
PACIFIC LEGAL FOUNDATION
8645 N. Military Trail
Suite 511
Palm Beach Gardens, FL  33410
Telephone:  (561) 691-5000
Facsimile:  (561) 691-5006
E-mail:  cmm@pacificlegal.org
         mrh@pacificlegal.org